U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

*(Rev. 5/1/13)*
APR 2 0 2016

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
_____ DIVISION

Nathaniel Mingo
_____
Plaintiff

Civil Action No. **5:16-cv-0522 SecP**

Prisoner # D.O.C. 415870  I.D. 27256

Bossier Maximum Correctional Facility,
Julian C. Whitting, SUED INDIVIDUALLY, Rodney Boyer,
Brad Anderson, Mark Toleso, John Doe, Jane Doe, Jane Doe,
SUED IN THEIR OFFICIAL CAPACITIES and INDIVIDUALLY
VS.
Defendant

Judge _____

Magistrate Judge _____

## COMPLAINT
## PRISONER CIVIL RIGHTS UNDER 42 U.S.C. § 1983

I.   **Previous Lawsuits**

a.   Have you begun any other lawsuit while incarcerated or detained in any facility?

Yes [  ]   No [✓]

b.   If your answer to the preceding question is "Yes," provide the following information.

1.   State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the County or Parish):

_____

_____

2.   Name the parties to the previous lawsuit(s):

Plaintiffs: _____

Defendants: _____

3.   Docket number(s): _____

4.   Date(s) on which each lawsuit was filed: _____

5.   Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:

_____

_____

*(Rev. 5/1/13)*

c.   Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?

Yes [       ]   No [ ✓ ]

If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

II.   a.   **Name of institution and address of current place of confinement:**

*Bossier Maximum Correctional Facility 2985 Old Plain Dealing Rd. Plain Dealing, LA 71064*

b.   Is there a prison grievance procedure in this institution?

Yes [ ✓ ]   No [       ]

1.   Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit?

Yes [ ✓ ]   No [       ]

2.   If you did not file an administrative grievance, explain why you have not done so.

3.   If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?)

*I appealed all decision and recieved no satisfactory results from the Major of Corrections (Warden)*

Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

III.   **Parties to Current Lawsuit:**

a.   Plaintiff,   *Nathaniel Mingo*

Address   *2985 Old Plain Dealing Rd. Plain Dealing, La 71064*

(Rev. 5/1/13)

b.   Defendant, Julian C. Whittington _____, is employed as Sheriff, sued in his individual capacity at Bossier Maximum Correctional Facility

Defendant, Rodney Boyer, sued in his official and individual capacity is employed as Warden, at Bossier Maximum Correctional Facility

Defendant, Brad Anderson, sued in his individual and official capacity is employed as Assistant Warden Lieutenant at Bossier Maximum Correctional Facility

Additional defendants, sued in his official and individual capacity) (Doctor) (Doctor) Mark Toloso (Lieutenant), John Doe, Jane Doe, (R.N) Jane Doe, and Bossier Maximum Correctional Facility, sued in their official and individual capacity

## IV.   Statement of Claim

State the **FACTS** of your case. Specifically describe the involvement and actions of each named defendant. Include the names of all persons involved in the incident(s) or condition(s) giving rise to this lawsuit, and the dates upon which and the places where the incident(s) and/or condition(s) occurred. **YOU ARE REQUIRED TO SET FORTH ONLY FACTUAL ALLEGATIONS. YOU ARE NOT REQUIRED TO SET FORTH LEGAL THEORIES OR ARGUMENTS.**

1. On or about March 3, 2015, Plaintiff Nathaniel Mingo started taking mental health medication under Defendant Jane Doe's care and placed in solitary confinement.

2. On April 7, 2015, Defendant Lieutenant Mark Toloso was informed that the medical watch was over on Plaintiff Mingo but Defendant Toloso still refused to re-house Plaintiff.

3. On May 5, 2015, Plaintiff Mingo still remained in isolation confinement in a hostile environment and though Plaintiff was cleared of medical watch, he still had not seen defendant Jane Doe for a follow-up.

4. After Plaintiff Mingo was finally placed in general population in Dorm-C, to be moved because of threats, but was placed in solitary confinement within the same dorm intentionally

5. Plaintiff Mingo experienced ear problems, mental extreme stress, and emotional extreme stress which worsened mental health condition.

6. On September 23, 2015, Plaintiff Mingo was taken to the medical infirmary for a doctors visit about the complaint of his ears at about 8:30 a.m.

7. On September 23, 2015, Defendant John Doe was informed of the injuries to Plaintiff's Mingo's ears and used an examining instrument, jamming, the earwax deeper into the ear canal causing severe impaired hearing.

8. Defendant John Doe prescribed an ear wax drug for plaintiff Mingo but ear wax still remained in the ears of Plaintiff Mingo when he was sent back to the dorm.

9. Plaintiff was still in solitary confinement with unjustifiable treatment which inflicted further physical injury due to extreme conduct that caused severe emotional distress by defendant John Doe.

10. Plaintiff Mingo's ear injuries caused a variety of excruciatingly painful problems (injuries) that were or, seem to be, fluid build ups in the chest, back, knees and other areas that produced fear, mental anguish, and misery.

11. Plaintiff told a Deputy that he had not eatin or drank in days because of injuries and he told Plaintiff Mingo to fill out a medical form.

12. On October 6, 2015, Defendant John Doe who was provided by Bossier Maximum Correctional Facility as a professionally competent physician who was qualified to examine inmates and diagnose illnesses, was told yet again about Plaintiff Mingo's injuries.

13. It was predictable that Plaintiff Mingo had serious injuries that were or could lead to permenant loss which were foreseeible but Defendant John Doe failed to refer Plaintiff Mingo to LSU Medical Center, recommending a specialist for the next available

day, stating he was unable to perform the procedure at the facility so, Plaintiff

Mingo was sent back to the Dorm being told it was nothing the defendant could do.

14. After known enimies were discharged Plaintiff was moved back into the general population

of Dorm-C and on November 10, 2015, Plaintiff Mingo wrote a Interoffice Communication

Medical Attention Request stating his ears were still "LOUDLY RINGING", eardrums were

still collapsing, ears were still clogged up, and the time length the injuries had been occurring

15. On November 12, 2015, Defendant R.N. Katrina Chandler responded to the request

(Jane Doe)

form by stating that the mental health medication the Plaintiff Mingo was prescribed

by defendant Jane Doe can cause loud ringing so defendant Chandler dis-continued

the medication but refrained from scheduling Plaintiff Mingo another doctors visit

only verifying that Plaintiff Mingo would be scheduled to see defendant Jane Doe.

16. After mental health medication was dis-continued without seeing defendant Jane Doe

to be replaced by another so Plaintiff Mingo started suffering from nightmares,

physcological thought processing began not functioning the same, and thoughts became

troubled because Plaintiff's mind was impaired.

17. On January 7, 2016, after numerous complaints defendant John Doe finally told Plaintiff Mingo he would have a life-long injury because he would need a hearing aid but couldn't see a specialist until after his court case was over to recieve treatment which a on duty Deputy was there to wittness.

18. On January 11, 2016, Plaintiff Mingo formally filed an administrative remedy procedure grievance form after all informal processess were sought.

19. On January 26, 2016, Defendant Lieutenant and screening officer Toloso   rejected the A.R.P. as unfounded failing to investigate enough to make an informed judgement to send Plaintiff Mingo to a specialist while knowingly disregarding the fact that the Plaintiff Mingo had a "lengthy history" of seeking urgent medical attention during incarceration.

20. On February 1, 2016, Plaintiff Mingo filled out a medical request to see Defendant Jane Doe concerning the side-effects of the mental health medication after waiting for the "scheduled" appointment Defendant Chandler supposedly as rainged.

21. On February 2, 2016, Plaintiff Mingo filed an appeal to the grievance stating all the reasons he should see a specialist concerning serious injuries being suffered.

22. On February 7, 2016, Plaintiff Mingo formally filed an Administrative Remedy Procedure grievance form about the mental health care issues as well.

23. On February 11, 2016, Defendant Toloso responded by rejecting form after being informed that the Plaintiff Mingo had already done so.

24. On February 12, 2016, Plaintiff Mingo finally attended an appointment with defendant Jane Doe who informed Plaintiff Mingo that the mental health medicine defendant Chandler spoke of had no such side-effects causing injuries to ears.

25. Plaintiff Mingo told Defendant Jane Doe about all the new symptoms he was having and expressed his fear for being treated because of the condition he was in due to the treatment of staff that he had currently underwent resulting in injuries and mental deterioration.

26. Defendant Jane Doe did, however, inform Plaintiff Mingo in specific word for word detail that he would need to see a ears, nose, and throat specialist with a Deputy to wittness.

27. On February 17, 2016, Plaintiff Mingo appealed the A.R.P. decision on the mental health issue.

28. On February 18, 2016, Defendant Assistant Warden Lieutenant Brad Anderson called Plaintiff Mingo out of his cell after lunch to persuade Plaintiff Mingo to sign a form dismissing the Administrative Remedy Procedure grievance.

29. Plaintiff Mingo declined and was sent back to his cell.

30. A few minutes later defendant Anderson came back to escort plaintiff Mingo into his office where Defendant Warden Captain Rodney Boyer was also in attendance.

31. Both defendants Boyer and Anderson were aware of other issues concerning plaintiff's mental health where plaintiff Mingo filed an appeal A.R.P.

grievance stating his physcological thought processing wasn't functioning right

due to side-effects also of mental health medication.

32. Defendants Boyer and Anderson looked at their computer screen verifying that

the Plaintiff Mingo needed to see a specialist.

33. Defendants Boyer and Anderson presented a form to accept plaintiff Mingo

complaint which had no form of remedy relief to Plaintiffs injuries but were

supporting Defendants John Doe statement concerning that their would be nothing

done until Plaintiffs court case was over.

34. Within the contents of the form were instructions to the inmate at the top, "

If you are not satisfied with this response you will have to seek other means

to gain a remedy you desire."

35. Within the rest of the grievance response was written the acknowledgement of the

diagnosis of the Plaintiff Mingo but the rest of the contents were in contradiction

of the facilities policies and the decision the committee made the Plaintiff

could not complain or challenge the problem through the facilities prison system anymore indefinetly. Nonetheless, the Plaintiff still gave the defendants a chance to fix the situation.

36. Plaintiff Mingo asked Defendant Boyer and defendant Anderson if signing the document meant that all available remedies were exhausted so Plaintiff could seek other means to gain the remedy desired and through the informed consent of the operation of the remedy procedure given by prison officials Plaintiff signed the document.

37. Then the defendant Boyer and defendant Anderson pressured Plaintiff Mingo urgently to dismiss the other appealed A.R.P. grievance form but Plaintiff declined under the assumption that he was being tricked into making a unsophisticated misinformed decision.

38. On February 18, 2016, Defendant Anderson came back again alleging that the mental health A.R.P. grievance form was about the same matter as the A.R.P. before.

39 The Plaintiff Mingo denied this accussation and then Defendant Anderson switched it up saying that the A.R.P grievance form was not an appeal to the first decision but it was a new A.R.P. grievance form which it wasnt.

40. Then Defendant Anderson said it didn't have a reference code on the appeal and he would not review it as an appeal which was already written and filed before for defendant Toloss to review, stating it would be dismissed.

41. The second A.R.P. grievance form was filed in the same manner as the first one and Defendant Anderson didn't have a problem with the first one.

42. On February 29, 2016, at about 1:50 - 2:15 p.m., defendant Anderson was questioned on the subject of if the Plaintiff had exhausted all available remedies to move forward into a federal court and the answer was yes.

43. Defendant Anderson also said that they were waiting for D.O.C. to approve me to be able to go to LSU Hospital but it hasnt been approved yet.

44. At 2:28 p.m. in the salad pole, defendant Anderson came back to inform me that

I had been approved through D.O.C. (Department of Corrections) to go see a

specialist and that this facility would take me after I questioned him twice about

rather the A.R.P. had really been fully exhausted again.

45. Defendant Anderson also said, "I could go for it." "Go ahead and sue since I

had a 2nd degree murder charge, I had nothing to loose.

46. Defendant Anderson said that no lawyer would take my case and that I would

loose

47. On March 5, 2016, Defendant Anderson walked into Plaintiff Mingo's cell in the

morning to inform Plaintiff that he would be going to doctor's appointment.

48. It has been over 7 months the Plaintiff Mingo has sustained his injuries

and over 1 month since the answer to the first A.R.P. grievance form.

*(Rev. 5/1/13)*

**V.    Relief**

State exactly what you want the court to provide to you or do for you. Make no legal arguments. Cite no cases or statutes.

_____

_____

_____

_____

_____

**VI.    Plaintiff's Declaration**

a.    I understand that if I am transferred or released, I must apprise the Court of my address, and my failure to do so may result in this complaint being dismissed.

b.    I understand that I may not proceed without prepayment of costs if I have filed three lawsuits and/or appeals that were dismissed on grounds that the action and/or appeal was frivolous or malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

c.    If I am located in a prison participating in the Electronic Filing Pilot Program, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this   14   day of   April   , 20  16  .

D.O.C.#41587O  I.D.#27256

**Prisoner no. (Louisiana Department of Corrections or Federal Bureau of Prisons)**

*Nathaniel Mingo*

**Signature of Plaintiff**

Page 4 of 4

# Relief

A. Issue a declaratory judgement stating that:

1. Defendants Bossier Maximum Correctional Facility, Whittington, Boyer and Toloso, and Anderson's actions in failing to provide adequate medical care and adequate mental health care for the plaintiff violated and continue to to violate the plaintiff's rights under the Eighth Amendment to the United States Constitution.

2. Defendant Toloso denial and delayed treatment knowing the plaintiff needed treatment constituting cruel and unusual punishment and failing to act in reliance on the judgement of qualified personnel constituting deliberate indifference to plaintiffs serious needs violating the Eighth Amendment.

3. Defendants Jane Doe's failure to follow-up with plaintiff who has known or suspected mental disorders, gross departure from professional standards

in treatment and stopping psychiatric medications without reason with disastrous

results constitutes inadequate mental health care violating Eighth Amendment.

4. Defendant Joe Doe's conduct and treatment unjustifiably inflicted pain, injury,

and permanent harm causing fear, mental anguish, misery, delayed plus denied

treatment, and interferring with access to treatment which is cruel and unusual

punishment constituting also deliberate indifference violating the Eighth

Amendment.

5. Defendant Jane Doe dis-continued mental health medication, failed to make

an informed judgement, made a medical decisions based on non-medical

constituting deliberate indifference violating Eighth Amendment.

B. Issue an injunction ordering Defendants Bossier Maximum Correctional Facility,

Boyer, and Anderson or their agents to:

1. Immediately arrange for the plaintiff to be evaluated by a qualified

physician specialist with expertise in the treatment and restoration and function of sustaining injuries.

2. Carry out without delay the treatment directed by such medical practitioner.

C. Award compensatory damages in the following amounts:

1. $500,000 jointly and severally against defendants Bossier Maximum Correctional Facility, Whittington, Boyer, and Anderson for the physical and emotional injuries sustained as a result of the plaintiff's denial of medical care.

2. $100,000 jointly and severally against Toloso, Jane Doe, and John Doe, Jane Doe for the physical injury and resulting from their denying and delaying medical care treatment to the plaintiff.

D. Award punitive damages in the following amounts:

1. $20,000 each against defendants Boyer, Anderson, and Toloso

2. $10,000 each against defendants Jane Doe, Joe Doe, and Jane Doe

E. Grant such other relief as it may appear that plaintiff is entitled.

April 14, 2016

Respectfully submitted,

Nathaniel Mingo   I.D. # 27256   D.o.c. # 415870

Nathaniel Mingo   2985 Old Plain Dealing Rd. Plain Dealing, La 71064

DECLARATION IN SUPPORT OF REQUEST FOR MAGISTRATE JUDGE

Plaintiff Nathaniel Mingo request:

A Magistrate Judge to assist in the judgement of this lawsuit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

April 14, 2016

Nathaniel Mingo

Nathaniel Mingo   2985 Old Plain Dealing Rd. Plain Dealing, La 71064

DECLARATION IN SUPPORT OF REQUEST FOR TRIAL BY JURY

Plaintiff Nathaniel Mingo request:

A trial by jury provided by the Court to decide a verdict in this case being pursued in the District Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

April 14, 2016

Nathaniel Mingo

Nathaniel Mingo   2985 Old Plain Dealing Rd. - Plain Dealing, La 71064

DECLARATION IN SUPPORT OF THE COMPLAINT VERIFICATION

Plaintiff Nathaniel Mingo states:

The statements and facts are being declared verified. The contents and documents are correct and true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

April 14, 2016

Nathaniel Mingo

Nathaniel Mingo    2985 Old Plain Dealing Rd. · Plain Dealing, La 71064
Pro se;