UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **NATHANIEL MINGO** | **DOCKET NO. 5:16-cv-522; SEC. "P"** |
| **VERSUS** | **JUDGE FOOTE** |
| **BOSSIER MAXIMUM CORRECTIONAL FACILITY, ET AL.** | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint (Doc. 1), amended complaint (Doc. 14), and second amended complaint (Doc. 24), filed by pro se Plaintiff Nathaniel A. Mingo ("Plaintiff"), *in forma pauperis* and pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at the Bossier Maximum Security Center in Plain Dealing, Louisiana. He claims that his civil rights were violated by prison officials. Plaintiff names as defendants the Bossier Maximum Correctional Facility, Julian C. Whittington, Rodney Boyer, Brad Anderson, Mark Toloso, John Doe, Jane Doe, and Katrina Chandler.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Factual Allegations

Plaintiff claims that on March 3, 2015, he was placed in solitary confinement and given mental health medication while under the care of Jane Doe.

Plaintiff alleges that on September 23, 2015, he was taken to the infirmary for a doctor's visit because of complaints about his ears. He claims that Dr. John Doe used an examining instrument that pushed earwax deeper into Plaintiff's ear canal and impaired his hearing. He claims Dr. John Doe prescribed a medication for earwax, but the earwax remained in Plaintiff's ears when he was

sent back to his dorm. Plaintiff alleges that his ear problems caused fluid build-up in his chest, back, knees, and other areas of his body. (Doc. 1) He claims that his physical condition caused him to suffer fear, mental anguish, and misery.

Plaintiff claims that on October 6, 2015, he again told Dr. John Doe about his injuries, but the doctor did not refer him to LSU Medical Center and told him that he was unable to perform a procedure at the infirmary. He claims he was told there was nothing that could be done for him, and he was returned to his dorm. (Doc. 14, p.6).

Plaintiff alleges that, on November 10, 2015, he wrote an interoffice communication medical request because his ears were ringing loudly and were clogged, and his eardrums were collapsing. (Doc. 1). Plaintiff claims that on November 12, 2015, nurse Katrina Chandler responded to his request and informed him that the mental health medication he was prescribed could cause loud ringing in his ears. He claims Nurse Chandler discontinued the medication and verified that he would be scheduled to see Jane Doe. (Doc. 14, p. 6-7).

Plaintiff claims that on January 7, 2016, Dr. John Doe told Plaintiff he needed a hearing aid but could not see a specialist until after his court case was completed. Plaintiff filed a grievance for the denial of care, which was rejected by Lt. Toloso on January 26, 2016, with a note that Plaintiff had a lengthy history of medical attention. (Doc. 1, p. 24; Doc. 14, p. 8). Plaintiff claims that Lt. Toloso failed to adequately investigate his grievance.

On February 1, 2016, Plaintiff filed a medical request regarding the side-effects of his mental health medication and because he had not had a follow-up appointment. On February 7, 2016, he filed a grievance in the administrative remedy procedure about his mental health care. On February 11, 2016, Lt. Toloso rejected this grievance. (Doc. 1, p. 22).

Plaintiff claims that on February 12, 2016, he had an appointment with Jane Doe. He claims Jane Doe told him that his mental health medication had not caused the ringing in his ears. He claims Jane Doe told him that he needed to see an ENT doctor. (Doc. 1).

Plaintiff claims that on February 18, 2016, Assistant Warden Brad Anderson called him out of his cell and tried to persuade him to dismiss his grievance. He claims Defendants Anderson and Boyer tried to confuse him about his grievances. (Doc. 1). Plaintiff alleges Anderson told him the facility was waiting on DOC approval to send him to LSU Medical Center. He claims that later that day, Anderson informed him that he had been approved to see a specialist. (Doc. 1; Doc. 14, p. 9-10).

Plaintiff also alleges that, on February 18, 2016, Julian C. Whittington failed to follow the written policy of the prison. (Doc. 14, p. 11).

Plaintiff claims that on March 5, 2016, Anderson informed him that he had an appointment with a doctor.

Plaintiff also mentions that he was housed in solitary confinement for periods of time due to threats against him (Doc. 1).

**Law and Analysis**

Pre-trial detainees possess a constitutional right to be free from punishment. See Bell v. Wolfish, 441 U.S. 520, 534-37 (1979). The standard applied to a medical care claim asserted by a pretrial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (quoting Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996)). Under the "episodic act" standard, which would be applicable in this case, "a state official's episodic act or omission violates a pretrial detainee's due

process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, a plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials. See Hare, 74 F.3d at 643, 650.

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). Deliberate indifference occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 837-840 (1994).

In Woodall v. Foti, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Plaintiff's complaints have not been ignored, and there are no allegations to support Plaintiff's conclusion that the defendants acted with deliberate indifference to a serious medical need. Plaintiff received medical care on September 23, 2015, October 6, 2015, January 7, 2016, and February 12, 2016. Plaintiff received ear drops for his ear wax, and he has seen the mental health provider. See e.g., Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of

medical services provided cannot support a § 1983 claim); Wesson v. Oglesby, 910 F.2d 278, 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference). Moreover, Plaintiff's complaint that ear wax caused a build up of fluid in his chest, back, knees, and other areas is far-fetched - or conclusory, at best.

Plaintiff's disagreement with his diagnosis or treatment does not state a constitutional claim. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Plaintiff does not allege that the defendants purposefully gave him improper treatment, ignored his medical complaints, "or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." See Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). The defendants were not required to send Plaintiff to another doctor or conduct further diagnostic tests. See Estelle v. Gamble, 429 U.S. 97, 107 (1976).

Plaintiff complains that, in November, 2015, Katrina Chandler discontinued medication that she believed could have been causing ringing in Plaintiff's ears. To the extent that Defendant Chandler was incorrect, Plaintiff presents a claim for negligence, not deliberate indifference. Negligence, neglect, or medical malpractice do not constitute deliberate indifference. See Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Even "gross negligence" does not establish deliberate indifference. Hernandez v. Tex. Dep't of Prot. and Reg. Servs., 380 F.3d 872, 882 (5th Cir. 2004). Thus, Plaintiff fails to state a claim against Katrina Chandler.

Plaintiff alleges that Jane Doe, a mental health professional, treated him on March 3, 2015, and prescribed divalproex for a mental disorder. (Doc. 14, p. 26). Although he alleges Defendant Chandler discontinued the medication in November, 2015, he was examined by Jane Doe on February 12, 2016. He told Jane Doe that he was afraid to take his mental health medication. Plaintiff

has not alleged that Jane Doe ignored his complaints or refused to treat him.

Plaintiff complains that Defendants Mark Toloso, Rodney Boyer, and Brad Anderson denied his grievances. However, Plaintiff does not have a federally-protected right to have grievances investigated and resolved. See Sandin v. Conner, 515 U.S. 472 (1995); Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005) (no federally protected liberty interest in having grievances resolved to their satisfaction). Since the Constitution does not provide a right to a prison grievance procedure, Plaintiff's claim should be dismissed.

Plaintiff has alleged no personal involvement by Sheriff Whittington, nor has he alleged that a constitutional deprivation resulted from a policy implemented by the sheriff. See Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.1987); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.1983). In fact, Plaintiff complains that Sheriff Whittington has a policy in place regarding medical care, but has failed to follow the policy. A failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir.1996) (citations omitted); see also Murphy v. Collins, 26 F.3d 541, 543 (5th Cir.1994). Plaintiff clearly disagrees with the medical treatment provided, but his allegations establish that his complaints have been addressed, not ignored.

Plaintiff names the Bossier Maximum Security Facility as a defendant. A parish prison facility is not a juridical person capable of being sued. A jail is "not an entity, but a building." See Jones v. St. Tammany Parish Jail, 4 F.Supp.2d 606, 613 (E.D. La. 1998).

Plaintiff's claim regarding solitary confinement or protective custody also fails to state a constitutional claim. Plaintiff does not allege that he was placed in solitary confinement as punishment, but rather for protection due to threats against him and/or his medical condition. (Doc.

1). Solitary confinement has been held as a due process violation only in extraordinary circumstances. See Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008) (finding no due process violation based on twelve months in protective lockdown). Plaintiff's allegations regarding his classification do not indicate a constitutional violation.

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's § 1983 complaint be **DENIED** and **DISMISSED**, with prejudice, pursuant to § 1915(e)(2) and § 1915A.

### Objections

**Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before a final ruling.**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

THUS DONE AND SIGNED in chambers in Monroe, Louisiana, this 26th day of July, 2016.

Karen L. Hayes
United States Magistrate Judge